## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**FLORIDA STREET HOLDINGS, LLC**                     **CIVIL ACTION**

**VERSUS**

**U.S. BANK NATIONAL**                        **NO.: 15-00714-BAJ-EWD**
**ASSOCIATION, AS TRUSTEE, AS**
**SUCCESSOR IN INTEREST TO**
**BANK OF AMERICA, NATIONAL**
**ASSOCIATION, AS SUCCESSOR BY**
**MERGER TO LASALLE BANK**
**NATIONAL ASSOCIATION, FOR**
**THE REGISTERED HOLDERS OF**
**J.P. MORGAN CHASE**
**COMMERCIAL MORTGAGE**
**SECURITIES TRUST 2008-C2,**
**COMMERCIAL MORTGAGE PASS-**
**THROUGH CERTIFICATES, SERIES**
**2008-C-2**

## RULING AND ORDER

Before the Court is a **Motion to Dismiss (Doc. 17)** filed by Defendant U.S.

Bank National Association, as Trustee, as successor in interest to Bank of America,

National Association, as successor by merger to LaSalle Bank National Association,

for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities

Trust 2008-C2, Commercial Mortgage Pass-Through Certificates, Series 2008-C-2

("Defendant") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff

Florida Street Holdings, LLC ("Plaintiff") has filed a memorandum in opposition (Doc.

24), to which Defendant has replied (Doc. 32). Jurisdiction is proper pursuant to 28

U.S.C. §§ 1331 and 1332. For the reasons explained herein, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

In 2007, Plaintiff purchased a commercial property known as the Chase South Tower in downtown Baton Rouge, Louisiana (the "Property"). (*See* Doc. 1-1 at pp. 1—2, ¶¶ 2, 4). Plaintiff financed the purchase by obtaining a loan from one of the Property's largest tenants, J.P. Morgan Chase Bank ("Chase Bank"). (*See id*. at p. 2, ¶¶ 4—5). The loan required, *inter alia*, Plaintiff to begin making "not less than $66,000"[1] monthly deposits into an escrow account on or before October 1, 2014. (*See id*. at pp. 3—4, ¶¶ 16—17). These deposits were to continue until the escrow account equaled or exceeded $1,508,000.00. (*See id*. at p. 4, ¶ 19); (*See id*. at pp. 101—02).

When Plaintiff, by its own admission, failed to make the above-mentioned monthly deposits, (*see id*. at p. 4, ¶ 20), Defendant threatened to foreclose upon the Property, (*see id*. at p. 4, ¶ 21); (*see id*. at p. 110). Plaintiff responded by launching a preemptive legal strike, asserting that: (1) Defendant may not be "the true owner and holder of" the loan documents upon which it threatens to foreclose, (*see id*. at p. 8, ¶ 41), and (2) even if Defendant is the true owner and holder of the loan documents, the Chase Second Termination Option constitutes a prohibited tying arrangement under 12 U.S.C. § 1972(1)(C), (*see id*. at pp. 8—9, ¶¶ 43—49); (*see id*. at pp. 101—102).

---

[1] Doc. 1-1 at p. 101 (the "Chase Second Termination Option").

2

Plaintiff's first assertion ("Count I") is styled as a request for declaratory judgment. (*See id.* at p. 8, ¶ 42). Plaintiff's second assertion ("Count II") seeks damages pursuant to 12 U.S.C. § 1975. (*See id.* at p. 9, ¶ 48).

## II.   STANDARD OF REVIEW

### A.   Which Standard Applies?

Plaintiff asserts that all questions related to the sufficiency of its complaint should be resolved under the Louisiana Code of Civil Procedure because (a) the complaint was filed in state court and (b) the Federal Rules of Civil Procedure cannot be retroactively applied. (*See* Doc. 24 at pp. 5—6). In support of its position, Plaintiff cites *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946—47 (5th Cir. 2014), a case in which the United States Court of Appeals for the Fifth Circuit refused to retroactively apply Rule 15(c). However, *Taylor* did not, as Plaintiff suggests, somehow render every complaint filed in state court beyond the reach of Rule 8. Rather, *Taylor* merely held that Rule 15(c) may not, pursuant to the Rules Enabling Act,[2] revive an otherwise dead state law claim post-removal. *See id.* at 947; *see also D & S Marine Transp., L.L.C. v. S & K Marine, L.L.C.*, No. 14-CV-2048, 2015 WL 5838220, at *4 (E.D. La. Oct. 7, 2015). *Mitchell v. Shaw Power Servs., LLC*, No. CIV.A. 15-00184-BAJ, 2015 WL 3683284, at *4 (M.D. La. June 12, 2015), says no more.

Having already been removed from state court, Plaintiff's Complaint will be analyzed under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 81(c)(1). Accordingly, to the extent that Plaintiff's Complaint fails to comport with Rule 8, it

---

[2] 28 U.S.C. § 2072.

will be dismissed pursuant to Rule 12(b)(6). *See Braden v. Tornier, Inc.*, No. C09-5529RJB, 2009 WL 3188075, at *2 (W.D. Wash. Sept. 30, 2009) (recognizing the unavoidable "plight" of plaintiffs who are "held to one pleading standard in state court" and another pleading standard in federal court post-removal).

## B.    Rule 12(b)(6) Standard of Review

To defeat a Rule 12(b)(6) motion to dismiss, a complaint must (a) state a claim upon which relief can be granted, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), and (b) provide the Court with sufficient factual content from which "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When evaluating a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views them in a light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

## III.   DISCUSSION

### A.    Count I: Declaratory Judgment

#### i.    Article III Standing

Defendant initially characterizes Count I as nothing more than "misapprehensions and suspicions [that] do not give rise to a real and justiciable case and controversy for this Court to decide." (*See* Doc. 17-1 at p. 13). Such a statement is presumably[3] intended to suggest that Plaintiff has not, as to Count I, suffered an

---

[3] Citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), Defendant seems to assert, with respect to Count I, that Plaintiff lacks both Article III and prudential standing, *see* Doc. 17-1 at p. 13, even though the former arises under Rule 12(b)(1) rather than Rule 12(b)(6), *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). However, the Court's "independent obligation

4

injury sufficient to confer upon it standing under Article III. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (listing "injury in fact" as one of the essential elements of Article III standing).

With that, the Court disagrees. True, "[a]n injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotations omitted) (citing *Lujan*, 504 U.S. at 560); *State of Tex. v. W. Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989) (noting that "the case or controversy requirement of Article III . . . is identical to the actual controversy requirement under the Declaratory Judgment Act").[4] But the Fifth Circuit long ago held that even "[t]he threat of litigation, if specific and concrete, can . . . establish a controversy upon which declaratory judgment can be based." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000). The question is simply "whether an injury that has not yet occurred is sufficiently likely to happen [so as] to justify judicial intervention." *Id.* (quoting *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)).

Attached to Plaintiff's now-removed complaint is a letter in which Defendant's agent threatens to seek "[a]ny and all remedies available under the loan documents . . . including acceleration of the Note and appointment of a receiver" if Defendant does

---

to assure" itself of jurisdiction requires it to "examine the constitutional dimension of standing before turning to its prudential aspects." *Id.* That is, the Court's subsequent analysis is warranted, regardless of whether Defendant actually believes Plaintiff's Article III standing is in doubt.

[4] Because the Louisiana Declaratory Judgment Act is procedural rather than substantive, *see* LA. CIV. CODE PROC. art. 1872 (Ed. Note) and art. 1883, only its federal counterpart applies post-removal, *see Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010); *cf. Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998).

not receive certain payments from Plaintiff on or before July 10, 2015. (*See* Doc. 1-1 at p. 110); *see also W. Pub. Co.*, 882 F.2d at 175 (noting that the party seeking declaratory relief bears the burden of proving, by a preponderance of the evidence, that an actual controversy exists). Such a threat is sufficiently concrete, particularized, and imminent as to constitute an "actual controversy" for purposes of Article III. *See, e.g., Rodriguez v. Bank of Am., N.A.*, No. SA-12-CV-00905-DAE, 2013 WL 1773670, at \*4 (W.D. Tex. Apr. 25, 2013), *aff'd*, 577 F. App'x 381 (5th Cir. 2014).

### ii.   Prudential Standing

Prudential standing encompasses, *inter alia*, "the requirement that a plaintiff's complaint fall within the zone of interest protected by the law invoked." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). That is, where, as here, a court is sitting in diversity,[5] Plaintiff has prudential standing only insofar as it has invoked a state statute that actually confers upon it the "right to sue." *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) (internal quotations and citations omitted); *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012).

Count I, inexplicably, does not identify the substantive law upon which it rests. However, according to Plaintiff's opposition, Count I consists of three assertions: (1) the loan documents may have been improperly assigned to the REMIC trust; (2) insofar as the loan documents were properly assigned to the REMIC trust, Defendant

---

[5] *See* Doc. 1 at pp. 3—6, ¶¶ 6—17.

enjoys beneficial ownership of said documents rather than legal title thereto; and (3) the loan documents were improperly assigned to LaSalle Bank.[6] (*See* Doc. 24 at pp. 11—15).

Plaintiff alleges that its first two assertions are governed by New York law. (*See id.* at pp. 7—8, 11—13). Accordingly, they may only be raised by "a trust beneficiary or a person acting [on] his behalf." *See Le Bouteiller v. Bank of New York Mellon*, No. 14 CIV. 6013 PGG, 2015 WL 5334269, at \*\*7—8 (quoting *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 87—90 (2d Cir. 2014)) (emphasis added). Plaintiff is indisputably neither. *See id.* at \*8. Therefore, New York law does not confer upon Plaintiff the right to sue. *See id.*[7]

Plaintiff alleges that its third assertion is governed by Louisiana law. (*See* Doc. 24 at pp. 7, 13—15). However, Louisiana law precludes "the ultimate debtor [from questioning] the validity of an assignment of debt unless he can show [that he was] prejudice[d]" thereby. *Louisiana Mobile Imaging, Inc. v. Ralph L. Abraham, Jr., Inc.*, 44,600, p. 5 (La. App. 2 Cir. 10/14/09); 21 So. 3d 1079, 1082 (citing *Sutton v. Lambert*, 94-2301, (La. App. 1 Cir. 6/23/95); 657 So. 2d 697, 707, *writ denied*, 95-1859 (La. 11/3/95), 661 So. 2d 1384); *see also Bonner v. Beaird*, 10 So. 373, 374 (La. 1891); *Keith*

---

[6] The Court utilizes Plaintiff's opposition to Defendant's motion to dismiss in order to clarify, rather than go beyond, the four corners of Plaintiff Complaint. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999).

[7] The factual similarities between this case and *Le Bouteiller* make *Le Bouteiller*'s holding all the more persuasive. *See Le Bouteiller*, 2015 WL 5334269 at \*1 (noting that the trust at issue was: (a) organized under New York law and (b) a REMIC trust); *See id.* at \*2 ("Plaintiff does not dispute that he owes money on his loan obligation, and he admits that . . . his mortgage [is] in default. Plaintiff claims, however, that the assignment of the Note and Deed of Trust to the Bank was invalid and that, as a result, the Bank and the other Defendants hold no interest in the Mortgaged Premises and have violated the law in seeking payment on the mortgage and foreclosure on the Mortgaged Premises.").

*v. Comco Ins. Co.*, 574 So. 2d 1270, 1276 (La. Ct. App.), *writ denied*, 577 So. 2d 16 (La. 1991). Plaintiff's inability[8] to pay the underlying debt does not render its assignment prejudicial. *See, e.g., Keith*, 574 So. 2d at 1276 (describing a plaintiff who can show prejudice as one who, by virtue of assignment, is deprived of its ability to assert certain rights); *Zurich Ins. Co. v. Grain Dealers Mut. Ins. Co.*, 169 So. 2d 6, 10 (La. Ct. App. 1964) (describing a plaintiff who can show prejudice as one who, by virtue of assignment, faces the "possibility of being required to pay its obligation twice"). Therefore, Louisiana law also does not confer upon Plaintiff the right to sue.

Accordingly Defendant's Motion to Dismiss is **GRANTED** insofar as Count I is **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6). *See Rodriguez*, 577 F. App'x at 382 (recognizing that a court may dismiss, with prejudice, the claims of a plaintiff who lacks prudential standing).

### B.    Count II: Illegal Tying

Defendant asserts that Count II is, as pled, "facially deficient because [Plaintiff] fails to allege how the 'tie' . . . does or could harm competition, which is a threshold allegation to any anti-tying claim." (*See* Doc. 17-1 at p. 18). With that, the Court disagrees. True, in 1978, the Fifth Circuit held that the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1971 *et seq.*, was intended to "prohibit anti-competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire," *Swerdloff v. Miami Nat. Bank*, 584 F.2d 54, 58 (5th Cir. 1978).

---

[8] *See* Doc. 1-1 at p. 4, ¶ 20.

Yet, 12 years later, the Fifth Circuit explicitly distinguished an anti-tying claim from a claim asserted under the nation's "general antitrust statutes." *Dibidale of Louisiana, Inc. v. Am. Bank & Trust Co., New Orleans,* 916 F.2d 300, 305—06 (5th Cir. 1990). That is, as the law currently stands in this circuit,[9] "a plaintiff claiming an unlawful tie-in or reciprocal dealing requirement under section 1972 may recover *without* demonstrating the tying bank's market power or the anti-competitive effect of the alleged arrangement." *Id.* at 306 (emphasis added).

All of Defendant's other arguments are merit-based[10] and have no place in a Rule 12(b)(6) motion to dismiss. (*See* Doc. 17-1 at pp. 15—19); (*See* Doc. 26-1 at pp. 4—5). Unlike in *Akiki*, 2015 WL 5559423 at *4, Plaintiff does not concede that the Chase Second Termination Option is "typical" of the banking industry. To the contrary, Plaintiff asserts that the Chase Second Termination Option "is *not* related to or usually provided in connection with a commercial real estate loan . . . ." (Doc. 1-1 at p. 5, ¶ 22) (emphasis added).

Accordingly, Defendant's Motion to Dismiss is, with respect to Count II, **DENIED**.

---

[9] There does, on this issue, appear to be a split amongst the circuits. *Compare S & N Equip. Co. v. Casa Grande Cotton Fin. Co.,* 97 F.3d 337, 346 (9th Cir. 1996) (citing *Dibidale of Louisiana, Inc.,* 916 F.2d at 305) (holding that "a plaintiff claiming an unlawful tie-in under § 1972, unlike a plaintiff claiming a violation under the general antitrust statutes, need not establish the anti-competitive effects of the tie-in or the market share that the defendant possesses"), *with Akiki v. Bank of Am., N.A.,* No. 14-15297, 2015 WL 5559423, at *4 (11th Cir. Sept. 22, 2015) ("A litigant who seeks to assert a claim [under section 1972] must allege that the condition placed on the loan is (1) an unusual banking practice; (2) an anticompetitive tying arrangement; and (3) a practice that benefits the bank") (internal quotations and citations omitted).

[10] To be sure, such arguments would properly be before the Court if Defendant had alternatively moved for summary judgment pursuant to Rule 56. *See* Fed. R. Civ. P. 56(b) (noting that "a party may file a motion for summary judgment at *any time* until 30 days after the close of all discovery") (emphasis added).

## IV.    CONCLUSION

**IT IS ORDERED** that Defendant's **Motion to Dismiss (Doc. 17)** is **GRANTED** with respect to Count I and **DENIED** with respect to Count II.

**IT IS FURTHER ORDERED** that Count I of Plaintiff's Complaint, (*see* Doc. 1-1 at pp. 5—8, ¶¶ 24—42), is **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6).

Baton Rouge, Louisiana, this _18th_ day of March, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

10